**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**LEDAWN GIBSON,**

      **Plaintiff,**

**v.**                                  **CASE NO.:** _____

**FLORIDA A&M UNIVERSITY BOARD OF**
**TRUSTEES,**

      **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff LEDAWN GIBSON, by and through her undersigned counsel, and hereby files this lawsuit against Defendant FLORIDA A&M UNIVERSITY BOARD OF TRUSTEES, and alleges as follows:

**JURISDICTION AND VENUE**

1.      This is an action by Plaintiff against her former employer for gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); violation of the Equal Pay Act, 29 U.S.C. § 206(d) (federal EPA); gender discrimination and retaliation under the Florida Civil Rights Act of 1992, §760.01, Fla. Stat. *et seq.* ("FCRA"); and violation of the Florida Equal Pay Act ("Florida EPA"), § 725.07, Fla. Stat.

2.      This Court has jurisdiction over Plaintiff's Title VII and federal EPA claims under 28 U.S.C. §1343(a)(4) because it is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.  This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367 because those claims are so related to Plaintiff's claims under Title VII and federal EPA claims that they form part of the same case or controversy.

3.      Venue is appropriate in the Northern District of Florida under 28 U.S.C. §1391(b) because Defendant is deemed to reside in this district under 28 U.S.C. §1391(c) and because the events giving

rise to Plaintiff's claims occurred in this district.

## ADMINISTRATIVE PROCEEDINGS

4.      On or about February 20, 2019, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").  A true and correct copy of the Charge of Discrimination is attached hereto and incorporated herein as Exhibit A.

5.      On or about August 22, 2019, the EEOC issued a Dismissal and Notice of Right to Sue.  A true and correct copy of the EEOC's Notice is attached hereto and incorporated herein as Exhibit B. This action is being filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue.

6.      Plaintiff has exhausted all administrative remedies prior to the filing of this lawsuit. All other conditions precedent to the commencement and maintenance of this action have been satisfied or waived.

## PARTIES

7.      Plaintiff LeDawn Gibson ("Gibson") is a resident of Tallahassee, Leon County, Florida. At all times relevant to this Complaint, Gibson was employed by Florida A & M University.

8.      Florida A & M University is a public university and a part of the Florida State University System. As such, the Florida A & M University Board of Trustees ("FAMU") is the entity with the legal capacity to sue and to be sued and is therefore rightfully named as a party in this action.

## STATEMENT OF FACTS

9.      Gibson was hired in May of 2008 as the Head Athletic Coach for the FAMU Women's Basketball Team. As such, Gibson was considered an Administrative and Professional Employee operating under the terms of a renewable Employment Contract.

10.      When Gibson was hired, pursuant to her Employment Contract, her annual salary was $90,000.

11.     During the eleven (11) years she was employed with FAMU, Gibson never received an increase in her annual salary.

12.     Robert McCullum, the Head Coach of the Men's Basketball Team, receives an annual salary of $150,000. His contract includes a specific provision for "merit or cost of living increases," to be "distinguished from his win-loss record."  As such, McCullum will receive annual increases regardless of the success of his team, pursuant to his employment contract. Gibson's Employment Contract did not include these provisions.

13.     McCullum was also provided the "Standard University Fringe Benefits," which include group insurance, vacation with pay, retirement programs, etc." Those provisions were not included in Gibson's contract.

14.     These disparities are part of FAMU's history and practice of underpaying its female athletics employees.

15.     For example, according to the minutes from a 2016 Meeting of the Special Committee on Athletics, the Head Softball Coach and the Track and Field/Cross Country Coach, both female, were paid annual salaries of $77,000 and 81,000 respectively.  Whereas, the Head Baseball Coach, who is male, was paid $95,000 in 2016.

16.     FAMU's Equality in Athletics Disclosure Act (EADA) reports for 2016-2017 demonstrate that the average men's salary was $98,271, while the average women's salary was only $66,067. The same disparity exists with assistant coaches, where male coaches averaged $47,405 and female assistant coaches averaged only $26,061.

17.     In addition to the annual salary disparities, the terms of the employment contract provided to the Men's Basketball Coach differs significantly from the contract terms under which Gibson was employed. For example, there are notable differences in financial incentive opportunities and the ability of the coaches to earn outside income.

18.     Specifically, McCullum's contract includes the following additional compensation terms

that are not included in Gibson's employment contract:

- Incentive Compensation, which includes both Academic Performance Incentives and Athletic Performance Incentives
- Other Miscellaneous Compensation and Benefits, including 8 complimentary tickets for all University sporting events
- Game guarantees, which allows the coach to use any excess amounts towards the operation of his program
- Courtesy car

19.     The only incentive Gibson was allowed to receive was based on her Academic Progress Rate (APR)  and, although she earned it the last few years of her employment, she never received the $5,000 incentive payments as promised in her contract.

20.     Additionally, the Men's Basketball Coach is allowed to conduct and run summer youth basketball camps using University facilities, but Gibson's contract did not include that provision.

21.     Gibson's contract required that she "agree not to personally or through any agent actively seek" outside employment of any nature without prior approval. However, the Head Men's Basketball Coach is encouraged to participate in outside activities, including paid radio and television endorsements, speeches and publications.

22.     Gibson was not provided the same support and resources for the Women's Basketball Team that the male coaches of the men's athletic teams received. These disparities include financial support for sufficient staffing and athlete recruiting.

23.     For example, the Men's Basketball Coach is allowed, per contract, a "Support Staff Salary Pool," which provides $150,000 in funds from which he is able to hire necessary support staff. This provision was not included in Gibson's contract.

24.     Not only was Gibson deprived of the same financial resources with regard to hiring necessary staff, but the staff she had was also being depleted by the athletic department leaving her short-staffed. For instance, during the 2015-2016 season, one of Gibson's assistant coaches was transferred by the former Athletic Director, Milton Overton, to work in his own office. That coach was

never replaced, leaving Gibson short-staffed. Gibson was also denied the use of graduate assistants, which was an option provided to the Men's Football program.

25.     In 2017, one of Gibson's coaches was terminated and another assistant coach left on maternity leave. Although Gibson was severely short-staffed and requested approval to hire new coaches, she was not allowed to do so. As a result, the Women's Basketball team had only two coaches for the first 11 games of the 2017 season.  On the other hand, the Men's Basketball team had a full staff with a head coach and three assistant coaches the entire season.

26.     Gibson was consistently told there was insufficient funding available to support her recruiting efforts for the Women's Basketball team. However, the men's athletic programs were always provided with sufficient funding and opportunities for recruitment.  In fact, the Men's Football coaches complained that they did not have sufficient funding and, in response, the athletic department moved $20,000 from the scholarship budget in order to provide them with additional funding. The coaches for the men's athletic teams have made complaints in the past regarding recruiting, for example, and FAMU's response was to divert funds in order to provide the funding they demanded.

27.     No alternative funding options were ever provided to meet the needs of Gibson's team and her requests for additional support were denied.

28.     FAMU's EADA data also shows that, during the 2016-2017 season, FAMU spent $87,736 in recruiting male athletes, but only $11,669 in recruiting female athletes.

29.     During Gibson's tenure, the Women's Basketball Team was routinely excluded from many valuable opportunities that the Men's Basketball Team was provided.

30.     For example, during the summer of 2016, both teams were scheduled for a trip to Canada. The female athletes had obtained their passports in anticipation of the trip, but only the men's team was allowed to go.

31.     The Men's Basketball Team and the Men's Football Team were both allowed to bring their entire teams to summer training, but the Women's Basketball Team was only allowed to let certain

players attend.

32.     The explanation for the exclusion of the Women's team was often a lack of funds; however, any time the Women's team had remaining funds in its budget they were diverted to other men's athletic programs.

33.     The funds for the university-provided credit account Gibson was provided were often diverted to the Men's teams by the athletic department.

34.     Gibson was routinely excluded from meetings by the athletic director even when those meetings included information that related to her team. The Women's Basketball Team was also routinely excluded from community service events and informational meetings, as well.

35.     These facts and many other gender disparities within the athletics department at FAMU were brought to the attention of the President, Larry Robinson, in 2018 by the CEO of Champion Women, an advocacy group.

36.     In 2015, Gibson first complained to FAMU's EEOC Director, Carrie Gavin, that she was being subjected to gender discrimination.  Throughout her employment, Gibson continuously voiced her complaints about the disparate pay she was receiving and the differences in financial support for her athletic program, among other discriminatory conduct by FAMU.

37.     On February 12, 2019, Gibson was first notified that she was being terminated.

38.     On or about February 14, 2019, Gibson again complained, this time to FAMU's Associate V.P. & Chief Diversity Officer, Joyce Ingram, that she was being subjected to discrimination based on her gender.

39.     Gibson was then terminated and her Employment Contract was not renewed, effective April 13, 2019.  The purported reason for Gibson's termination was her last two losing seasons.

40.     This purported reason was not justified by the specific provisions in her contract regarding non-reappointment, separation or termination of the employment contract. Specifically, none of the reasons listed in the Employment Contract include the team's win/loss record.

41.     Regardless FAMU cannot justify Gibson's termination based on the lack of success of her team when the Women's Basketball Team was not given equal or even adequate resources during those seasons. Gibson was severely understaffed for the last few years she was employed at FAMU and then, purportedly terminated for her team's poor performance.

42.     Gibson was replaced by a male coach, Kevin Lynum, who was named as the interim Head Coach and currently holds that position.

43.     As a result of FAMU's unlawful actions, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

**COUNT I**
**VIOLATION OF TITLE VII – GENDER DISCRIMINATION**
**Disparate Treatment in Compensation**

44.     Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1- 43 of this Complaint.

45.     This is a cause of action for unlawful discrimination based on gender under Title VII.

46.     Gibson is female and, therefore, is a member of a protected class under Title VII.

47.     FAMU violated Title VII by intentionally discriminating against Plaintiff on the basis of her gender.

48.     Gibson was subjected to an adverse employment action in that she was consistently paid less than her male counterparts. Gibson was also deprived of the same fringe benefits and compensation incentives that male coaches were offered and received. As such, FAMU treated Gibson differently than similarly situated employees outside Gibson's protected class in the terms and conditions of her employment, including all forms of compensation and benefits.

49.     As a direct and proximate result of FAMU's unlawful discrimination, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of

enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory damages, costs, and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF TITLE VII – GENDER DISCRIMINATION**
**Disparate Treatment in Terms and Conditions of Employment**

50.     Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1- 43 of this Complaint.

51.     This is a cause of action for unlawful discrimination based on gender under Title VII.

52.     Gibson is female and, therefore, is a member of a protected class under Title VII.

53.     FAMU violated Title VII by intentionally discriminating against Gibson on the basis of her gender.

54.     Gibson was subjected to discrimination in the terms and conditions of her employment. Specifically, Gibson was denied the same support and resources for the Women's Basketball Team that the male coaches of the male athletic teams received. These disparities include financial support for sufficient staffing and recruiting, as well as other opportunities for the female athletes on her team as stated herein.

55.     As a result of these deprivations, including being severely understaffed for the last few years she was employed at FAMU, her team's poor performance suffered and she was ultimately terminated, purportedly for that reason.

56.     As a direct and proximate result of FAMU's unlawful discrimination, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with

the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory damages, costs, and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

**COUNT III**
**VIOLATION OF TITLE VII – GENDER DISCRIMINATION**
**Wrongful Termination**

57.     Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1-43 of this Complaint.

58.     This is a cause of action for unlawful discrimination based on gender under Title VII.

59.     Gibson is female and, therefore, is a member of a protected class under Title VII.

60.     FAMU violated Title VII by intentionally discriminating against Gibson on the basis of her gender.

61.     Gibson was terminated because of her gender. The purported reason for Gibson's termination (her last two losing seasons) was not justified by the terms of her contract regarding the agreed basis for non-reappointment, separation or termination of said contract.

62.     Gibson was replaced by a male coach, Kevin Lynum, who was named as the interim Head Coach and currently holds that position.

63.     FAMU's discriminatory actions were done with malice and reckless indifference to Gibson's federally protected rights in violation of Title VII.

64.     As a direct and proximate result of FAMU's unlawful discrimination, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic

damages, front pay, compensatory damages, costs, and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

**COUNT IV**
**VIOLATION OF TITLE VII – GENDER DISCRIMINATION**
**Retaliation**

65.     Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1-43 of this Complaint.

66.     This is a cause of action for unlawful retaliation under Title VII.

67.     FAMU intentionally retaliated against Gibson because of her opposition to FAMU's unlawful employment practices, as set forth above, in violation of Title VII.

68.     Gibson engaged in protected activity when she complained of the disparate treatment she suffered based on her gender and was subsequently terminated.

69.     FAMU's retaliatory actions were done with malice and reckless indifference to Gibson's federally protected rights in violation of Title VII.

70.     As a direct and proximate result of FAMU's retaliatory conduct, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory damages, costs, and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

**COUNT V**
**VIOLATION OF THE EQUAL PAY ACT**

71.     Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1- 43 of this Complaint.

72.     Gibson is female and, therefore, is a member of a protected class under the Equal Pay

Act.

73.      Gibson's job functions as a head coach of the FAMU Women's Basketball Team involve equal skill, effort, and responsibility to the job functions of FAMU's male head coaches and were performed under the same or similar working conditions.

74.      During all relevant periods, Gibson received wages lower than most if not all, of FAMU's male coaches' wages while performing the same or substantially similar work to her male coworkers.

75.      Gibson was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the same or substantially similar work than her male coworkers at FAMU.

76.      The differences in pay between Gibson and her male coworkers was not based on seniority, a merit system, a system which measures earnings by quantity or quality of production, or any other factor not based on gender.

77.      By knowingly, willingly and intentionally providing for higher contract pay and greater fringe benefits and compensation incentives for male coaches, FAMU has impermissibly, and deliberately discriminated against Gibson.

78.      As a direct and proximate result of FAMU's unlawful discrimination, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and the loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory and liquidated damages, costs and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

## COUNT VI
## VIOLATION OF THE FCRA - GENDER DISCRIMINATION
### Disparate Treatment in Compensation

79.      Gibson adopts and incorporates by reference the allegations contained in Paragraphs

1- 43 of this Complaint.

80.     FAMU has engaged in unlawful employment practices in violation of the FCRA by engaging in intentional discrimination against Gibson on account of her gender.

81.     Gibson is female and, therefore, is a member of a protected class under the FCRA.

82.     FAMU violated the FCRA by intentionally discriminating against Plaintiff on the basis of her gender.

83.     Gibson was subjected to an adverse employment action in that she was consistently paid less than her male counterparts. Gibson was also deprived of the same fringe benefits and compensation incentives that male coaches were offered and received. As such, FAMU treated Gibson differently than similarly situated employees outside Gibson's protected class in the terms and conditions of her employment, including all forms of compensation and benefits.

84.     As a direct and proximate result of FAMU's unlawful discrimination, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory damages, costs, and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

**COUNT VII**
**VIOLATION OF THE FCRA – GENDER DISCRIMINATION**
**Disparate Treatment in Terms and Conditions of Employment**

85.     Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1- 43 of this Complaint.

86.     FAMU has engaged in unlawful employment practices in violation of the FCRA by engaging in intentional discrimination against Gibson on account of her gender.

87.     Gibson is female and, therefore, is a member of a protected class under the FCRA.

88.     FAMU violated the FCRA by intentionally discriminating against Gibson on the basis of her gender.

89.     Gibson was subjected to discrimination in the terms and conditions of her employment. Specifically, Gibson was denied the same support and resources for the Women's Basketball Team that the male coaches of the male athletic teams received. These disparities include financial support for sufficient staffing and recruiting, as well as other opportunities for the female athletes on her team as stated herein.

90.     As a result of these deprivations, including being severely understaffed for two of the last three years she was employed at FAMU, her team's poor performance suffered and she was ultimately terminated, purportedly for that reason.

91.     As a direct and proximate result of FAMU's unlawful discrimination, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory damages, costs, and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

**COUNT VIII**
**VIOLATION OF THE FCRA – GENDER DISCRIMINATION**
**Wrongful Termination**

92.     Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1-43 of this Complaint.

93.     This is a cause of action for unlawful discrimination based on gender under the FCRA.

94.     Gibson is female and, therefore, is a member of a protected class under the FCRA.

95.     FAMU violated the FCRA by intentionally discriminating against Gibson on the basis of her gender.

96.     Gibson was terminated because of her gender. The purported reason for Gibson's termination (her last two losing seasons) was not justified by the terms of her contract regarding the agreed basis for non-reappointment, separation or termination of said contract.

97.     Gibson was replaced by a male coach, Kevin Lynum, who was named as the interim Head Coach and currently holds that position.

98.     FAMU's discriminatory actions were done with malice and reckless indifference to Gibson's federally protected rights in violation of the FCRA.

99.     As a direct and proximate result of FAMU's unlawful discrimination, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory damages, costs, and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

**COUNT IX**
**VIOLATION OF THE FCRA – GENDER DISCRIMINATION**
**Retaliation**

100.     Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1-43 of this Complaint.

101.     This is a cause of action for unlawful retaliation under the FCRA.

102.     FAMU intentionally retaliated against Gibson because of her opposition to FAMU's unlawful employment practices, as set forth above, in violation of the FCRA.

103.     Gibson engaged in protected activity when she complained of the disparate treatment

14

she suffered based on her gender and was subsequently terminated.

104.    FAMU's retaliatory actions were done with malice and reckless indifference to Gibson's federally protected rights in violation of the FCRA.

105.    As a direct and proximate result of FAMU's retaliatory conduct, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory damages, costs, and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

**COUNT X**
**VIOLATION OF FLORIDA'S EQUAL PAY ACT**

106.    Gibson adopts and incorporates by reference the allegations contained in Paragraphs 1- 43 of this Complaint.

107.    Gibson is female and, therefore, is a member of a protected class under the Florida Equal Pay Act.

108.     Gibson's job functions as a head coach of the FAMU Women's Basketball Team involve equal skill, effort, and responsibility to the job functions of FAMU's male head coaches and were performed under the same or similar working conditions.

109.    During all relevant periods, Gibson received wages lower than most if not all, of FAMU's male coaches' wages while performing the same or substantially similar work to her male coworkers.

110.     Gibson was qualified for and entitled to wages equal to or higher than her male coworkers' wages performing the same or substantially similar work than her male coworkers at FAMU.

111.    The differences in pay between Gibson and her male coworkers was not based on seniority, a merit system, a system which measures earnings by quantity or quality of production, or any

other factor not based on gender.

112.     By knowingly, willingly and intentionally providing for higher contract pay and greater fringe benefits and compensation incentives for male coaches, FAMU has impermissibly, and deliberately discriminated against Gibson.

113.     As a direct and proximate result of FAMU's unlawful discrimination, Gibson has suffered damages, including the loss of compensation, mental anguish and emotional distress, and the loss of enjoyment of life. She has also incurred and will continue to incur, legal fees and costs associated with the vindication of her rights.

WHEREFORE, Plaintiff demands judgment against Defendant for back pay and other economic damages, front pay, compensatory and liquidated damages, costs and reasonable attorney's fees, along with such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, LEDAWN GIBSON, respectfully demands a trial by jury on all issues so triable.

Respectfully submitted this 15th day of October 2019.

**BURRUEZO & BURRUEZO, PLLC**

/s/ Carlos J. Burruezo, Esq.
**CARLOS J. BURRUEZO, ESQ.**
Florida Bar Number 843458
carlos@burruezolaw.com
docketing@burruezolaw.com
**BERTHA L. BURRUEZO, ESQ.**
Florida Bar Number 0596973
bertha@burruezolaw.com
911 Outer Road
Orlando (Baldwin Park), Florida 32814
Telephone: 407.754.2904
Facsimile: 407.754.2905

Attorneys for Plaintiff, LEDAWN GIBSON

4828-0415-8889, v. 1